UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ARTHUR GREEN #261830,

        Plaintiff,                                Case No. 2:08-cv-101

v.                                                  Honorable Robert Holmes Bell

ENID LIVINGSTON, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

I.        Factual allegations

Plaintiff Arthur Green #261830, an inmate at the Chippewa Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Enid Livingston, Stephen DeBoer, Migel Berrios, and Charles E. Braddock, who are employed as members of the Michigan Parole Board. Plaintiff alleges in his complaint that he is being improperly denied parole because he is Caucasian. Plaintiff claims that during the parole interview on October 31, 2005, Defendant DeBoer discussed Plaintiff's offense, participation in MDOC programming, and other relevant issues, and told Plaintiff to keep up the good work. Plaintiff accepted full responsibility for his crime and expressed remorse. Plaintiff claims that Defendant DeBoer failed to accurately note Plaintiff's statements during the interview, noting that Plaintiff had said "I don't know why I did it." Plaintiff denies ever making such a statement. Defendants DeBoer and Braddock subsequently voted to deny parole to Plaintiff for a period of 12 months in disregard to Plaintiff's "high probability for parole" score, his outstanding prison record, and excellent assaultive offenders therapy report. Plaintiff states that Defendants DeBoer and Braddock both voted to parole Terrence McDuffy #340185, an African American, who had the same homicide conviction as Plaintiff, was the same age, and had served less time than Plaintiff.

Plaintiff alleges that from the time he arrived at the unsecure level I unit at the Chippewa Correctional Facility (URF) on November 17, 2003, to the time of his first parole denial, there were a total of four prisoners, including Plaintiff, between the ages of 31 and 35 who were interviewed by the Michigan Parole Board for a homicide conviction. Of these four prisoners, Plaintiff is the only one who was denied parole. Plaintiff states that two of the prisoners were

African American and one was Hispanic. Plaintiff states that all three of the prisoners who received parole had serious institutional misconducts, "such as fighting, sexual misconduct, dangerous weapons, substance abuse, etc." Plaintiff also states that at least one of the prisoners granted parole had received a new conviction for smuggling drugs while serving the homicide conviction when he was granted parole. Plaintiff asserts that he has completed all of the Reception and Guidance Center (RG&C) recommendations with above average or excellent ratings, and at least one of the prisoners granted parole had not completed all RG&C recommendations. Plaintiff has been on gate pass/public works assignment for over four years with excellent work reports, but states that at least two of the prisoners granted parole were not approved for such a gate pass. Plaintiff contends that all of the reasons used by the Defendants as reasons in support of the decision to grant the three prisoners parole also applied to Plaintiff.

In February of 2006, a Caucasian parolee, Patrick Selepak, murdered three people, creating public fear and outrage. Plaintiff states that parole rates for violent offenders immediately decreased, and that the Parole Board temporarily stopped granting paroles to all prisoners serving sentences for homicide at the unsecure level I unit at URF. On July 10, 2006, Plaintiff was interviewed by Defendant Livingston, during which she indicated that Plaintiff should have been convicted of murder for his crime, and was lucky to even be considered for parole. On November 22, 2006, Plaintiff was notified that he had been denied parole for a period of 24 months. Plaintiff claims that Defendant Livingston's statement that Plaintiff had "no good explanation for the murder" did not accurately reflect Plaintiff's comments during the interview. Plaintiff alleges that when he expressed what he learned from the MDOC psychologist during Assault Offenders Therapy (AOT), Defendant Livingston reported that Plaintiff spouted "AOP jargon, but does not

seem to understand the precepts" and that he gave "no good explanation for the murder." Plaintiff further claims that Defendant Livingston referred to information in Plaintiff's presentence investigation report that was deemed to be false and inaccurate. In the case summary report, Defendant Livingston stated that Plaintiff's offense was a "[h]orrible, completely senseless crime," as well as a "vicious, senseless murder."

Plaintiff states that in the Case Summary Report, next to the description of the crime, it was noted that this was not the reason for the denial of parole. Plaintiff claims that Defendant Berrios had the responsibility to review the record and make an unbiased decision, based on the facts and not just on the reviewer's opinion. On November 15, 2006, Defendants Livingston and Berrios both voted to deny parole to Plaintiff for a period of 24 months. In the Case Summary Report, Defendant Livingston stated that Plaintiff had made gains, but still increased the length of the continuance.

Plaintiff alleges that since the time that Plaintiff received his first parole denial, in March of 2006, until April 19, 2008, there have been seven prisoners with a homicide conviction between the ages of 31 and 35 considered for parole in Plaintiff's unit. Plaintiff claims that of the seven prisoners, Plaintiff was the only Caucasian. Plaintiff was the only prisoner to receive a 24 month continuance, despite having the highest parole score. Plaintiff states that four prisoners received a 12 month continuance, and two received parole. Plaintiff contends that the "substantial and compelling" reasons used by Defendants to depart from Plaintiff's high likelihood of parole were neither objective nor verifiable, and that Defendants simply stated that Plaintiff lacked insight into his crime and needed to demonstrate greater insight prior to being paroled.

Plaintiff claims that the Defendants' conduct violated his due process and equal protection rights. Plaintiff seeks declaratory and injunctive relief, as well as costs and fees.

II. Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the undersigned notes that Plaintiff has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held

that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's Parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. March 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). Accordingly, Plaintiff has no liberty interest at stake. Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights. *See Sweeton*, 27 F.3d at 1164-65.

Plaintiff also claims that Defendants' conduct violates his right to equal protection because he was discriminated against for being Caucasian. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc.v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). The Michigan legislation does not implicate a fundamental right because there is no constitutional right to release on parole. *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994). In addition, the United States Supreme Court has previously held that Caucasians, such as Plaintiff, have none of the immutable characteristics of a suspect class so that the so-called "strict scrutiny" applied to cases involving either fundamental rights or suspect classifications is not applicable. *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 301 (1986).

Thus, in order to establish an equal protection violation, Petitioner must show that Defendants' conduct differentiated between similarly situated persons and was not rationally related

to any conceivable legitimate legislative purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hadix*, 230 F.3d at 843. Under this standard,

> the statute will be afforded a strong presumption of validity and must be upheld as long as "there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2643, 125 L. Ed. 2d 257 (1993). The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 2098, 124 L. Ed. 2d 211 (1993). The legislature is not even required to articulate any purpose or rationale in support of its legislation. *See Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S. Ct. 2326, 2334, 120 L. Ed. 2d 1, (1992). Consequently, plaintiffs bear the heavy burden of "negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320, 113 S. Ct. at 2643.

*Hadix*, 230 F.3d at 843.

The similarly situated inquiry focuses on whether Petitioner is similarly situated to another group for purposes of the challenged government action. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993); *accord Reynolds v. Sims*, 377 U.S. 533, 565 (1964) (equal protection requires "uniform treatment of persons standing in the same relation to the governmental action questioned or challenged"). As stated by the First Circuit,

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989). *See also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (holding that, in employment context, to show that others are similarly situated, a plaintiff must demonstrate that the comparables he proffers are similar in all relevant respects). "The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States." *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

Plaintiff in this case claims that he was denied parole because Defendants found that he lacked insight into his crime and needed "to demonstrate greater insight." Plaintiff fails to allege that prisoners treated differently similarly lacked understanding of their crimes. Therefore, in the opinion of the undersigned, Plaintiff has failed to show that he was similarly situated to prisoners who were granted parole or given shorter continuances.

In addition, even if Plaintiff were similarly situated to the prisoners mentioned in his complaint, Plaintiff's equal protection claim fails because the classification survives rational basis review. *See Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998) ("differentiation between prisoners and non-prisoners . . . has a rational basis").

"'The purpose of parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime.'" *People v. Gregorczyk*, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted). Protection of public safety is a stated purpose of parole Michigan's parole statutes. *Hopkins v. Michigan Parole Board*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, [the Parole Board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'")

(quoting MICH. COMP. LAWS § 791.233(1)(a)).  Preventing the early release of potentially violent inmates is a legitimate governmental interest.  *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates").  In the opinion of the undersigned, Defendants' determination that Plaintiff has not demonstrated a sufficient understanding of the nature of his crime is rationally related to the legitimate governmental interest in protecting the public.  Accordingly, the undersigned recommends dismissal of this claim.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   June 5, 2008

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).